UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

GREGORY ATWATER,

                Plaintiff,

v.                                                  Case No. 19-cv-1576-pp

JEFFREY ROLLINS, *et al.*,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

      Gregory Atwater, who is confined at the New Lisbon Correctional Institution and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let a prisoner plaintiff proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

The court received the full $350 filing fee on November 20, 2019. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee.

## II. Screening the Complaint

### A. Federal Screening Standard

Federal law requires that the court screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To proceed under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or laws of the United States and that whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004));

see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court will give a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B. The Plaintiff's Allegations

On August 13, 2013, the plaintiff was in custody at the John Burke Correctional Center. Dkt. No. 1 at ¶14. He woke up at 6:55 a.m. that day to go to breakfast, but seeing that the dining room was mostly empty and that breakfast was over, he went to the control center asked a correctional officer if he could request a "late tray" from the kitchen. The correctional officer said yes. Id. at ¶15. The kitchen supervisor gave the plaintiff permission to receive a breakfast tray. Id. at ¶16.

As the plaintiff sat down to eat, defendant Sgt. Nickel asked the plaintiff why he was eating when breakfast was over. Id. at ¶17. The plaintiff explained that he had permission from the corrections officer to request a breakfast tray from the kitchen supervisor. Id. at ¶18. The plaintiff says that Nickel went into the kitchen, then came back with the kitchen supervisor; Nickel asked the kitchen supervisor if he'd given the plaintiff permission to eat late, and the kitchen supervisor responded that he had, that he didn't think it was a problem because he frequently gave late meals to inmates with jobs. Id. at ¶19. The plaintiff says that Nickel responded that the plaintiff had missed breakfast and hadn't asked *her* for permission, so he could go to work hungry. Id. at ¶20. The plaintiff asserts that as Nickel was telling him to throw away his food, two

3

other officers came to the table and asked the plaintiff to "just get up and leave." Id. at ¶21.

The plaintiff stopped eating and began to return to his cell, when Nickel followed him, "yelling for him to throw his food away now." Id. at ¶22. The plaintiff kept walking, and says that Nickel kept yelling, saying, "you want to ignore me, you can go sit in the holding cell." Id. at ¶23. When the plaintiff was in his cell, other officers asked the plaintiff to come out of his cell to talk to them. Id. at ¶24. The plaintiff came out of his cell and told one of the officers that he was getting ready for work at the farm. Id. at ¶25.

The plaintiff says that as he began to walk toward an exit door in the "rec hallway," Sgt. Rollins got in front of the plaintiff and blocked the door. Id. at ¶26. The plaintiff asked if he was going to segregation for eating breakfast. Id. at ¶27. One of the officers responded that they didn't know what was going on, but that Nickel just wanted the plaintiff to sit in the holding cell. Id. at ¶28. The plaintiff again asked if he was going to segregation; he says that without any warning, Rollins put his hands around the plaintiff's head and tried to put him in a headlock. Id. at ¶29. The plaintiff started pushing Rollins's arms away to defend himself from being choked, as Rollins brought the plaintiff to the ground in the headlock. Id. at ¶30. Rollins then pushed the plaintiff, and for five to ten seconds the two pushed each other back and forth. Id. at ¶31. Nickel jumped on the plaintiff's back, punching him in the head; the plaintiff fell to the ground and other guards intervened, with a sergeant handcuffing the plaintiff. Id. at ¶32. The plaintiff says that while he was flat on his stomach on

the floor, Rollins started punching the plaintiff in the face, then got up and kicked him in the head. Id. at ¶33. The plaintiff then was picked up and put in a holding cell. Id. at ¶34. The plaintiff says that one of the officers made a copy of the surveillance video recording of this altercation. Id. at ¶41.

A few minutes later, Nurse Lampe came to the holding cell and asked if the plaintiff was okay and if he needed medical attention. Id. at ¶35. The plaintiff said that he couldn't see in his left eye and his lip was "busted" and bleeding. Id. at ¶36. Lampe said that the injuries weren't "life threatening" and that she would let the health services unit at Dodge Correctional Institution know that the plaintiff needed to be seen. Id. at ¶37. The plaintiff asked Lampe if she could look at him right then because he "couldn't breathe good" and the right side of his ribs was in pain. Id. at ¶38. Lampe said that the guards wouldn't let her open the holding cell door to look at him and told him to just wait until he got to Dodge Correctional for help. Id. at ¶39.

The plaintiff was transferred to Dodge and placed directly into segregation. Id. at ¶40. He asked for medical attention and was told that "HSU would be contacted." Id. For the next few days, the plaintiff continued to request medical attention for his swollen eye, busted lip and rib pain. Id. at ¶43. The plaintiff states that he believed his ribs were fractured. Id. It's unclear what happened with the plaintiff's requests for medical attention at Dodge, but he names Dr. Hoftizer as a defendant. Id. at ¶66.

The plaintiff alleges that Capt. Galligan "maliciously place[d] the plaintiff on multiple punitive Seg restrictions (lower trap, back of cell, bag meal only, no

5

phone, no rec) for 30 days, in retaliation of the physical altercation with [John Burke Correctional Center] guards." Id. at ¶42. Sgt. John from John Burke Correctional Center went to the plaintiff's segregation cell at some point and issued him a conduct report. Id. at ¶44. The plaintiff says that he stated that he wanted to have a hearing, call witnesses and request surveillance video of the incident. Id. The plaintiff says, however, that Sgt. John said that the plaintiff didn't have any witnesses and that there was no video and that Sgt. John told the plaintiff to sign the forms to have a hearing. Id. The plaintiff says that Sgt. John also said she'd be back with a witness form. Id. at ¶45. The plaintiff wrote a letter to John Burke Superintendent Rice to obtain the surveillance video of the altercation. Id. at ¶46.

The plaintiff says that Sgt. Maxwell from the John Burke Correctional Center (not a defendant) went to the plaintiff's segregation cell to give him hearing papers. Id. at ¶47. She told the plaintiff that the guards who were involved in the altercation were "really out to get [him]." Id. She stated that Sgt. John had the plaintiff "improperly sign the hearing papers." Id. Maxwell stated that there was surveillance video of the altercation and that there were numerous witnesses who saw the altercation and told her that the plaintiff didn't do anything wrong and got attacked over nothing. Id.

On September 13, 2013, the plaintiff had a due process hearing for the conduct report; Dodge Capt. Menne conducted the hearing. Id. at ¶48. The plaintiff asked for the hearing to be postponed because he had witnesses and he wanted the video of the incident to be submitted and viewed at the hearing.

6

Id. at ¶49. Menne said that he was informed that there was a recording but that it was not given to him by John Burke staff for the hearing; Menne also said that there was "no mention" of witnesses and/or statements from witnesses. Id. at ¶50. He told the plaintiff that since there was no video, the plaintiff should plead guilty and Menne wouldn't keep the plaintiff in segregation for long. Id. at ¶51. The plaintiff changed his written statement and was found guilty; Menne sentenced the plaintiff to 360 days in segregation. Id. The plaintiff appealed the decision and Dodge Deputy Warden Sam Schneiter affirmed, but changed the original disposition to include a major offense of battery. Id. at ¶53.

On October 3, 2013, the plaintiff filed two inmate complaints: one for procedural errors in his disciplinary proceeding (what he characterizes as the deliberate exclusion of the surveillance video and the denial of witnesses) and one for assault. Id. at ¶¶54-55. Both complaints were dismissed the same day. Id. at ¶55. The plaintiff asked Dodge staff to contact local law enforcement to press charges against Rollins and Nickel. Id. at ¶56. Menne went to the plaintiff's segregation cell and said he was told about the plaintiff's request to press charges and his inmate complaint alleging assault; Menne told the plaintiff that John Burke superintendent Rice wanted to press charges against the plaintiff because of his complaints. Id. at ¶57. A few days later, law enforcement contacted the plaintiff. Id. at ¶58. For relief, the plaintiff seeks monetary damages. Id. at page 7.

7

C.     Analysis

The plaintiff asks to proceed with a First Amendment retaliation claim against Galligan; an Eighth Amendment excessive force claim against Nickel and Rollins; an Eighth Amendment medical care claim against Lampe and Hoftiezer; and a Fourteenth Amendment due process claim against John, Menne, Schneiter and Rice. Dkt. No. 1 at 5.

Under Fed. R. Civ. P. 18(a), "[u]nrelated claims against different defendants belong in different suits," to prevent prisoners from dodging the fee payment or three strikes provisions in the Prison Litigation Reform Act. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternate claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Under this rule, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." George, 507 F.3d at 607. Joinder of multiple defendants into one case is proper only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action" Fed. R. Civ. P. 20(a)(2).

Although the facts alleged in the complaint all relate back to the incident on August 13, 2013 at John Burke Correctional Center, there are no questions of law or fact "common" to all defendants. For example, the facts underlying

8

the plaintiff's claim that Lampe and Hoftiezer showed deliberate indifference toward the plaintiff's busted lip/possibly fractured ribs are different from the facts underlying the plaintiff's claim that Gallian placed him in segregation for the purpose of "retaliation." The facts underlying his claim that John, Menne, Schneiter and Rice violated his due process rights during his disciplinary hearing are different from the facts underlying the plaintiff's claim that Rollins and Nickel used force for the sole purpose of causing needless pain. While some background facts may be common to some defendants, there are no questions of law or fact common to all defendants. The plaintiff's complaint violates Federal Rules of Civil Procedure 18 and 20, and such complaints "should be rejected." Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) (citing George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)). The plaintiff may not proceed on his original complaint.

The court will allow the plaintiff to amend his complaint, to select one set of claims on which to proceed in this lawsuit. The plaintiff may bring any other unrelated claims in a separate lawsuit. An amended complaint supersedes, or takes the place of, any prior complaint, so any allegations not included in the amended compliant are deemed withdrawn. See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1056 (7th Cir. 1998). The court is including with this order a blank complaint form. If the plaintiff wants to proceed with this lawsuit, he must write the word "Amended" at the top of the first page in front of the word "Complaint." He must write the case number for this case—19-cv-1576—in the space provided on the first page. He must list

each defendant he is suing in the caption of the complaint. He must use the lines in the "Statement of Claim" section to state what each defendant did to violate his rights. If the plaintiff files an amended complaint containing only one set of claims, the court will screen it under 28 U.S.C. §1983.

The court notes that for claims brought under 42 U.S.C. §1983, federal courts borrow the limitations period and tolling rules applicable to personal-injury claims under state law. Devbrow v. Kalu, 705 F.3d 765, 767 (7th Cir. 2013) (citing Richards v. Mitcheff, 696 F.3d 635, 637 (7th Cir. 2012)). In Wisconsin, "the applicable residual statute for § 1983 claims is Wis. Stat. § 893.53. *Hemberger v. Bitzer*, 216 Wis. 2d 509, 519 (1998) . . . ." D'acquisto v. Love, No. 20-C-1034, 2020 WL 5982895, at *1 (E.D. Wis. Oct. 8, 2020). At the time of the events described in the complaint, Wis. Stat. §893.53 provided for a six-year limitations period. Id.

The plaintiff dated the original complaint on October 25, 2019; this court received it on October 28, 2019. Dkt. No. 1 at 1, 7. He alleges that the incident at John Burke happened on August 13, 2013—six years and two and a half months before the court received the plaintiff's complaint. The due process hearing happened on September 13, 2013—six years and one and a half months before the court received the plaintiff's complaint. The plaintiff's inmate complaints were dismissed on October 3, 2013—six years and twenty-six days before the court received the plaintiff's complaint.

Even if the plaintiff chooses to amend his complaint to include only one set of claims (claims relating to the alleged assault by Rollins and Nickel, or

10

Case 2:19-cv-01576-PP   Filed 10/20/20   Page 10 of 12   Document 9

claims related to the alleged deliberate indifference by Lampe and Hoftiezer), that claim likely is time-barred. If the plaintiff decides that he does not wish to proceed with the lawsuit (and avoid incurring a strike), he does not need to amend the complaint. If he does not amend the complaint by the deadline the court sets below, the court will dismiss the case without prejudice and without a strike.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that if the plaintiff wants to proceed with this lawsuit, then by the end of the day on **November 20, 2020**, he must file an amended complaint that complies with this order. He must file the amended complaint in time for the court to *receive* it by the end of the day on November 20, 2020. If the court does not receive an amended complaint that complies with Rules 18 and 20 by the end of the day on November 20, 2020, the court will dismiss this case for violation of those rules.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse

517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 20th day of October, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**